IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard and Maria Shupe,<br><br>             Plaintiffs,<br><br>vs.<br><br>JPMorgan Chase Bank of Arizona,<br><br>             Defendant. | No. CV 11-00501-TUC-RCC (BPV)<br><br>**REPORT AND RECOMMENDATION** |

Before the Court are Defendant JPMorgan Chase Bank, N.A.'s ("Chase's") motion to dismiss (doc. 4) and Plaintiffs Richard and Maria Shupe's (the "Shupe's") motion to remand (doc. 6). For the reasons stated below, the Magistrate Judge recommends that Plaintiffs' motion to remand be denied and Defendant's motion to dismiss be denied.

Also pending before the Court is Plaintiffs' motion for leave to file an amended complaint. (Doc. 19) For the reasons stated below, the Magistrate Judge recommends that the District Court deny Plaintiff's motion to amend with leave to refile.

**I.**     **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs' complaint alleges that in May, 2010, Plaintiffs defaulted on their mortgage obligations to Defendant. (Doc. 1, Complaint, at 1) Plaintiffs warned Defendant several times not to call Plaintiffs. (*Id.*, ¶ 5) Thereafter, Defendants "made in excess of 100 calls to the Plaintiffs' residential telephone number" using "illegal auto dialing systems." (*Id.*, ¶¶ 3-4) The harassing and repeated phone calls aggravated Plaintiff Maria

Shupe's medical condition. (*Id.*, ¶¶ 7-8)

On May 31, 2011, the Shupes filed a complaint in Pima County Superior Court (Complaint) seeking statutory, actual and punitive damages against Defendants for violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.*, (TCPA), and under a state theory of invasion of privacy. (*Id.*, Causes of Action; Prayer for Relief)

On August 12, 2011, Defendant Chase filed a notice of removal in this court alleging federal question jurisdiction over the TCPA claim and supplemental jurisdiction over the state law claim. (Doc. 1, at 2) Defendant also alleged diversity jurisdiction. (*Id.*) Thereafter, Defendant moved to dismiss this matter, pursuant to Rule 12(b)(6), arguing the Complaint fails to state any claim upon which relief may be granted (doc. 4). The motion is fully briefed. (Docs. 4, 7, 13, 16, 18)[1]

Plaintiffs moved to remand the case to state court, contesting this Court's jurisdiction over the claims raised in the Complaint.[2] (Doc. 6) This motion is also fully briefed. (Docs. 6, 11, and 12)

**II.   DISCUSSION**

   A.   Motion to Remand

In general, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the

---

[1] Because this Court's order allowing Plaintiffs a second opportunity to address Defendant's motion to dismiss most likely crossed paths in the mail with Plaintiffs' own attempt to substantively address the motion to dismiss after filing a non-responsive motion (*see* Docs 7, 14, and 16), Plaintiffs took this opportunity to file a third response (doc. 17). The Court will consider all of Plaintiffs' filings to date, but hereby gives notice that unless a stay has been granted by the Court, all motions, memoranda, and pleadings submitted for the Court's review and decision must comply with the filing, time, and form requirements of the Rules of Practice of the United States District Court for the District of Arizona (Local Rules). Plaintiffs are cautioned to comply with all applicable rules of civil procedure; Plaintiffs' *pro se* status will not excuse noncompliance. *King v. Atiyeh*, 814 F.2d 565 (9th Cir. 1987).

[2] Plaintiffs also moved to stay the ruling on the motion to dismiss pending a ruling on the motion to remand in the same filing. The Magistrate Judge denied the motion to stay. (Doc. 14)

defendants . . . ." 28 U.S.C. § 1441(a). The defendant has the burden of proving removal is proper. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir.1992). In this case, Chase argues removal is proper because this court has federal question jurisdiction. (Notice of Removal.)

"As a general rule, the presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Arco Environmental Remediation v. Department of Health and Environmental Quality of the State of Montana*, 213 F.3d 1108, 1113 (9th Cir. 2000). "As the master of the complaint, a plaintiff may defeat removal by choosing not to plead independent federal claims." *Id.* at 1114.

In this case, the Shupes included in their complaint a federal statutory claim pursuant to the Telephone Consumer Protection Act. The Shupes argue, relying on *ErieNet Inc. v. Velocity Net Inc.*, 156 F.3d 513 (3rd Cir. 1998)(U.S. district courts lack federal question jurisdiction over private TCPA actions) and *International Science & Technology Inst. v. Inacom Communications, Inc.*, 106 F.3d 1146, 1158 (4th Cir. 1997) (same), that the TCPA grants state courts exclusive jurisdiction over private TCPA claims. (*See* Doc. 6, at 1-2).

Defendant conceded that this, at least, is "a question that sharply divides the Circuits."[3] (*See* Doc. 11, at 2; quoting *Ashland Hosp. Corp. v. IBEW Local 575*, 2011 U.S. Dist. LEXIS 78562 *14 (E.D. Ky. July 19, 2011). After briefing of this motion, however, the Supreme Court directly addressed this issue and held that "Congress did not deprive federal courts of federal-question jurisdiction over private TCPA suits." *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 747 (2012). Accordingly, the Magistrate

---

[3] Though at the time Defendant filed its response to Plaintiffs' motion, this Court was controlled by the Ninth Circuit's decision to join the Second, Third, Fourth, Fifth and Eleventh Circuits in "the somewhat unusual conclusion that state courts have exclusive jurisdiction over a cause of action created by' a federal statute, the Telephone Consumer Protection Act of 1991." *Murphey v. Lanier*, 204 F.3d 911, 915 (9th Cir. 2000)(citations and quotations omitted).

Judge recommends that the District Court find that federal-question jurisdiction exists over Plaintiffs' TCPA claim. As long as the complaint contains at least one federal cause of action, this court has original jurisdiction and removal is proper. *See Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 386 (1998) ("We have suggested that the presence of even one claim 'arising under' federal law is sufficient to satisfy the requirement that the case be within the original jurisdiction of the district court for removal.").

For the reasons stated above, the Magistrate Judge recommends that the District Court, after its independent review, deny Plaintiffs' motion to remand (Doc. 6). Because the Supreme Court has spoken plainly and clearly on the question of jurisdiction over TCPA claims, the Magistrate Judge does not, at this time, make an alternative recommendation as to diversity jurisdiction.

### B.     Motion to Dismiss

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations "'are taken as true and construed in the light most favorable to the nonmoving party.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted). Legal conclusions couched as factual allegations "are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), and therefore "'are insufficient to defeat a motion to dismiss for failure to state a claim,'" *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted). To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950

(quoting Fed. R. Civ. P. 8(a)(2)).

An affirmative defense may not be raised in a Rule 12(b)(6) motion unless the defense appears from the face of the complaint, *see Jones v. Block*, 549 U.S. 199, 215 (2007), or the defense raises no disputed issues of fact, *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). Where the motion to dismiss involves factual evidence outside the pleadings, a court may discretionarily convert the Rule 12(b)(6) motion into a motion for summary judgment under Rule 56 and give the parties a reasonable opportunity to present all materials relevant to the motion. *See* Fed. R. Civ. P. 12(d); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

A *pro se* complaint 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Hebbe v. Pliler*, 677 F.3d 338, (9th Cir. 2010) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94, (2007) (*per curiam*)); *Haines v. Kerner*, 404 U.S. 519, (1972). Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile. *See Cook, Perkiss & Liehe, Inc., v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (per curium).

Although courts will not normally look beyond the pleadings in resolving a Rule 12(b)(6) motion, *Lee v. City of Los Angeles*, *250 F.3d 668*, 688 (9th Cir.2001), a "court may consider material that the plaintiff properly submitted as part of the complaint or, even if not physically attached to the complaint, material that is not contended to be inauthentic and that is necessarily relied upon by the plaintiff's complaint." *Id.* A court may disregard allegations of the complaint that are contradicted by attached exhibits. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987). Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts. *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir.1987). The court may consider matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir.1986)

(*abrogated on other grounds by Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)). "The court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.1994). Nor must the court accept unreasonable inferences or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).

### 1.  Telephone Consumer Protection Act

Defendant argues that, as a matter of law, the TCPA does not apply to debt collectors, and thus Plaintiffs' first claim must be dismissed. (Doc. 4, at 3)(citing *Meadows v. Franklin Collection Serv.*, 414 Fed.Appx. 230, 236 (11th Cir. 2011). Plaintiffs respond that the Defendant ceased to fall under the umbrella of "debt collector" upon receiving notice not to call, upon termination of any business relationship after receiving notice of the pending default, and by making phone solicitations for refinancing products. Plaintiffs allege they sent five letters over a period of 30 days giving Defendant notice not to call their residence, and to only communicate with them by mail. Plaintiffs argue that upon default by the Plaintiffs, which was acknowledged in their letter to Defendant, Defendant had no claim against the Plaintiffs for any dollar deficiency in the non-judicial foreclosure process. Plaintiffs further argue that the phone calls were solicitations for optional methods of refinance, which constitute a solicitation, and were not attempts to collect a debt, and are therefore subject to the TCPA.

Congress has found that "unrestricted telemarketing can be an intrusive invasion of privacy" and "many consumers are outraged over the proliferation of intrusive, nuisance telemarketing calls to their homes" TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings) (internal quotation marks omitted). Additionally, "[A]utomated or prerecorded telephone calls" made to private residences, are rightly regarded by recipients as "an invasion of privacy." *Id.* (internal quotation marks omitted). Accordingly, Congress enacted the TCPA making it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a

message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [Federal Communications] Commission under paragraph (2)(B)." 47 U.S.C. § 227(b)(1)(B).

First, the Federal Communications Commission (FCC) exempts from the TCPA's statutory prohibition against prerecorded calls any call "made to any person with whom the caller has an established business relationship at the time the call is made[.]" 47 C.F.R. § 64.1200(a)(2)(iv). Second, the FCC exempts any call "made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute a telephone solicitation[.]" *Id.* § 64.1200(a)(2)(iii).

FCC regulations define an EBR as: "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship *has not been previously terminated by either party*." 47 C.F.R. § 64.1200(f)(4). (*emphasis added*) The FCC has also clarified that "all debt collection circumstances involve a prior or existing business relationship." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, at 8771–72, (1992), ¶¶ 36, 39. Additionally, these exemptions also "apply where a third party places a debt collection call on behalf of the company holding the debt*." Id.*, ¶ 39.

The FCC also incorporated into the exemption provisions that protect consumer privacy, such as a requirement that the communication be voluntary, an express time limitation, and a provision for customer termination of the relationship. *See* 47 C.F.R. § 64.1200(f)(4).

The "express consent" provision, however, is not an element of a TCPA plaintiff's *prima facie* case, but rather is an affirmative defense for which the defendant bears the

burden of proof. *Grant v. Capital Management Services, L.P.,* 2011 WL 3874877 *n1 (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 565 (2008) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent.")). Defendant bears the burden of demonstrating that its conduct falls clearly within the exemption. *Rheem Mfg. Co. v. Rheem*, 295 F.2d 473, 475 (9th Cir. 1961).

Defendant can demonstrate prior express consent through Plaintiffs allegations, contained in the Complaint that Plaintiffs defaulted on their mortgage payments to Defendant in May 2010. Unless this relationship is terminated by either party, calls made up to eighteen (18) months after this relationship existed fall within the EBR exemption. *See* 47 C.F.R. § 64.1200(f)(4).

Plaintiffs responded to Defendant's motion to dismiss by pointing out that Plaintiffs alleged, in the Complaint, that they acknowledged their default on their mortgage payments to Defendant, thus satisfying their debt to Defendant, and terminated their existing business relationship in writing with Defendant. Taking Plaintiffs allegations as true, which this Court must do, Plaintiffs allege that they terminated their existing business relationship with Defendant in August, 2010.

Defendant's response that the TCPA does not apply to Chase because Plaintiffs cannot unilaterally terminate the promissory note or deed of trust, and that until the power of sale was actually executed and a trustee's deed was issued, both contracts were in full force and effect does not negate the allegation in the Complaint of termination of the business relationship. First, this raises disputed issues of fact which may not be resolved here. Second, for purposes of the TCPA, the FCC's definition of "termination" of an existing business relationship does not necessarily require the complete termination of all contractual relationships between the parties. *See e.g. CE Design Ltd. V. Prism Business Media, Inc.*, 2009 WL 2496568 * (N.D. Ill 2009)("[A]n EBR may be terminated by the recipient's request to terminate future communications.")(citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 7 F.C.C.

Rcd. 8752, 8779 n. 47 (Oct. 16, 1992).(Explaining that "subscribers may sever any business relationship, *i.e.*, revoke consent to any future solicitations, by requesting that they not receive further calls from a telemarketer, thus subjecting that telemarketer to the requirements of § 64.1200(e).") Accordingly, the Magistrate Judge finds that Plaintiffs have sufficiently alleged a termination, in writing, of the existing business relationship sufficient to withstand Defendant's motion.

This is not the end of the analysis, however, as the FCC has explained that "all debt collection circumstances involve a prior or existing business relationship," and concluded that "prerecorded debt collection calls would be exempt from the prohibitions on such calls to residences as: (1) calls from a party with whom the consumer has an established business relationship, and (2) commercial calls which do not adversely affect privacy rights and which do not transmit an unsolicited advertisement." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 7 FCC Rcd. 8752, 8771, 8773 (Oct. 16, 1992). In a 1995 Memorandum Opinion and Order, the FCC clarified its 1992 position, explaining that:

> As we stated in the [1992] Report and Order, prerecorded debt collection calls are adequately covered by exemptions adopted in our rules. Our rules explicitly exempt calls made either by a party with whom the subscriber has an established business relationship or calls that do not transmit an unsolicited advertisement and are made for a commercial purpose. Household confuses the two exemptions. We have specifically noted that 'prerecorded debt collection calls [are] exempt from the prohibitions on [prerecorded] calls to residences as ... commercial calls ... which do not transmit an unsolicited advertisement.' Nevertheless, the Report and Order explicitly states that subscribers who sever a business relationship are revoking consent to any future solicitation. Because the termination of an established business relationship is significant only in the context of solicitation calls, that act of terminating such a relationship would not hinder or thwart creditors' attempts to reach debtors by telephone.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 10 FCC Rcd. 12391, 12400 (Aug. 7, 1995) (ellipses and brackets in original). In

- 9 -

the 2003 Report and Order revising § 64.1200, the FCC reiterated that "the act of 'terminating' an established business relationship will not hinder or thwart creditors' attempts to reach debtors by telephone, to the extent that debt collection calls constitute neither telephone solicitations nor include unsolicited advertisements." FCC, 68 Fed.Reg. 44,144, 44,158 (Jul. 25, 2003).

Plaintiffs asserted in their response that they vacated the premises of the home, and that Defendant had no legal basis upon which to assert a status of debt collector in making the calls to Plaintiffs after termination of the business relationship.  Plaintiffs assert in their responses that the calls were not for the purpose of debt collection, rather, the calls were for the purpose of solicitation of other financial products. The purpose of the Telephone Act is to restrain telemarketers, not creditors, from making unsolicited, automated calls. *See e.g. Spencer v. Arizona Premium Finance Co., Inc.*, 2011 WL 4473178 (W.D. N.Y 2011) (dismissing TCPA claim as to erroneous debt collection calls even though Plaintiff owed no debt to Defendant where calls where clearly absent of advertisement or other solicitation).  Plaintiffs' allegations that these calls were not an attempt to collect a debt, but an attempt to solicit a product or offer a service, though not alleged in the Complaint, appears to be acknowledged, at least in part, by Defendant in its Reply (*see* doc. 18, n.1).

The FCC has unequivocally stated that "calls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing" and "calls regarding debt collection ... are not subject to the TCPA's separate restrictions on 'telephone solicitations.' " *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565, ¶ 11 (Jan. 4, 2008).

On the other hand, though Defendant has established that there existed a debtor-creditor relationship through the allegations contained in the complaint, it is not just the relationship of the parties, but the content of the calls that exempts them from the TCPA, and Defendant has not established that these calls were made for the purpose of debt collection, and, in fact, seems to concede that these calls were not, in fact, an attempt at

debt collection. *See Reply* (Doc. 18, n.1). The court cannot, however, resolve such factual issues on a motion to dismiss. Looking to the allegations of the Complaint, the Defendant cannot establish that it falls under an exemption to the TCPA.

Because the TCPA makes it unlawful "to make any call" using an automatic telephone dialing system or an artificial or prerecorded voice, *see* 47 U.S.C. § 227(b)(1)(A), it is irrelevant that Plaintiff, at this time, has not alleged that the calls were solicitations or telemarketing calls.

Accordingly, the Magistrate Judge recommends that the District Court DENY the motion to dismiss Count I.

### 2. Invasion of Privacy

Plaintiffs' Complaint alleges that the Defendant "knowingly and willingly invaded the privacy of the Plaintiffs by making repeated calls to the Plaintiffs residential telephone." (Complaint, Count II) Defendants move to dismiss, arguing that Plaintiffs do not allege that even if the calls might have been irritating or annoying, they do not rise to the level of "extreme and outrageous" as required under Arizona law, and must be dismissed as a matter of law.

The Arizona Supreme Court has recognized the invasion of privacy torts laid out in the *Restatement (Second) of Torts* §§ 652A *et seq.*, which include the tort of intrusion upon seclusion, *see Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 338 (1989), and at least one Arizona Court of Appeals decision has applied the tort of intrusion upon seclusion. *See Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 279 (Ct.App.1997). The Arizona courts generally follow the Restatement in the absence of Arizona authority on an issue. *Reed v. Real Detective Publ'g. Co.*, 63 Ariz. 294 (1945); *Campbell v. Westdahl*, 148 Ariz. 432 (Ct.App.1985). Consequently, we look to the Restatement for guidance regarding how the Arizona Supreme Court would resolve the Shupes' claim.

Plaintiffs claim of intrusion on seclusion falls under the invasion of privacy tort. *Godbehere*, 162 Ariz. at 338. The Restatement describes the tort of intrusion upon seclusion as follows: "One who intentionally intrudes, physically or otherwise, upon the

solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Hart*, 190 Ariz. at 279 (citing *Rest. (2d)Torts § 652B* (1977)). A person is liable for that tort if he "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... if the intrusion would be highly offensive to a reasonable person." *Hart,* 190 Ariz. at 279 (citing *Rest. (2d) Torts* § 652B (1977)). Therefore, a defendant is liable "only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Id.* (citing *Rest (2d) Torts* § 652B cmt. c).

Defendant argues that in Arizona, a plaintiff must also show that a defendant's action was "extreme and outrageous," citing *Godbehere v. Phoenix Newspapers*, 162 Ariz. at 339. Defendant has misread this case. In *Godbehere*, the Arizona Supreme Court acknowledged that the Court of Appeals had been *erroneously* requiring litigants to satisfy the element of outrageousness and disagreed with this line of reasoning, holding that "the fact that outrage and invasion of privacy both provide redress for emotional injury does not persuade us that the actions are "merged" or that plaintiffs should be required to prove the former in an action for the latter." *Id.*, at 340. The court did not share the court of appeals' concern with creating "unwarranted lawsuits," and did not believe that freeing a plaintiff from the need to prove outrageous conduct in a privacy suit would require the courts to provide a remedy for "every trivial indignity" because the plaintiff's subjective threshold of sensibility is not the measure, and "trivial indignities" are not actionable. *Id.* Thus, while there is no liability for calling a person on the phone on one occasion or even two or three, to demand payment of a debt, "it is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to [the plaintiff's] existence that [the plaintiff's] privacy is invaded." Rest. § 652B cmt. d. This is a question of fact which cannot be resolved in this motion.

Accordingly, because the Plaintiff need not demonstrate outrageous conduct, the

Magistrate Judge recommends that the District Court deny Defandant's motion to dismiss on these grounds.

### C. Motion to Amend

Plaintiffs have filed a motion to amend, attempting to clarify the TCPA and invasion of privacy claims, and to add additional claims. (Doc. 19). Plaintiffs did not attach a proposed draft and for this reason, Defendant opposes the motion. (Doc. 21) Defendant also argues that, for the reasons stated in the motion to dismiss, any amendments would be futile.

For the reasons stated above, the Magistrate Judge finds that amendment would not be futile. However, the Court agrees that Plaintiffs have not complied with this Court's local rules regarding motions to amend. Accordingly, the Magistrate Judge recommends that the District Court deny Plaintiff's motion to amend with leave to refile, and to notify Plaintiffs as follows:

LRCiv 15.1(b) states that "[a] party who moves for leave to amend a pleading...must attach a copy of the proposed amended pleading as an exhibit to the motion…, which must indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underling the text to be added. The proposed amended pleading is not to incorporate by reference any part of the preceding pleading, including exhibits." An amended pleading supersedes the original, the latter being treated thereafter as non-existent. *Bullen v. De Bretteville*, 239 F.2d 824, 833 (9th Cir. 1956) (*citing Nisbet v. Van Tuyl*, 7 Cir., 224 F.2d 66; *Meyer v. State Board of Equalization*, 42 Cal.2d 376, 267 P.2d 257; 71 C.J.S., Pleading, 321). Once amended, the original no longer performs any function as a pleading and cannot be utilized to aid a defective amendment. *Id.* at 833.

### III. RECOMMENDATION

In conclusion, the Magistrate Judge RECOMMENDS that the District Court DENY Plaintiffs' motion to remand (Doc. 6).

The Magistrate Judge FURTHER RECOMMENDS that the District Court DENY Defendant's motion to dismiss (Doc. 4).

The Magistrate Judge FURTHER RECOMMENDS that Plaintiffs' motion for leave to file amended complaint (doc. 19) be DENIED WITH LEAVE TO REFILE.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed R. Civ.P. 72(b).

If objections are not timely filed, then the parties' rights to de novo review by the District Court may be deemed waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir) (en banc), cert. denied, 540 U.S. 900 (2003).

If objections are filed the parties should use the following case number: **CV 11-0501-TUC-RCC**.

Dated this 14th day of March, 2012.

_____
Bernardo P. Velasco
United States Magistrate Judge